**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| FIRST SECURITY BANK, | |
| Plaintiff, | |
| v. | Case No. 16-cv-05258 |
| CRAIG LYLE CAMPBELL AND KIM ANN WEBSTER-CAMPBELL, | Hon. Matthew F. Kennelly |
| Defendants. | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**
**THE SECOND AMENDED COMPLAINT**

Steven B. Towbin (#2848546)
Laura E. Caplin (#6297784)
David R. Doyle (#6303215)
Shaw Fishman Glantz & Towbin LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60654
P: (312) 541-0151
F: (312) 980-3888

Attorneys for Craig Lyle Campbell and Kim Ann Webster-Campbell

# TABLE OF CONTENTS

TABLE OF CONTENTS .......................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... ii

ARGUMENT ........................................................................................................................... 1

I.      FSB Fails to State a Claim for Tortious Interference. ...................................................... 1

      A.      The Response mischaracterizes the Motion but does not dispute that a
            party cannot tortiously interfere with its own contract, as the SAC alleges. .......... 1

      B.      *Dass* precludes a finding that Defendants are liable for LLCs' conduct by
            virtue of their membership or management thereof................................................ 2

      C.      FSB cannot evade *Dass* through an alter ego theory. ........................................... 3

      D.      The tortious interference claim is even weaker with regard to Kim. ...................... 5

II.     FSB Fails to State a Claim for Aiding and Abetting. ........................................................ 7

III.    FSB Fails to State a Claim for Conspiracy ..................................................................... 10

IV.    FSB Fails to State a Claim for Unjust Enrichment .......................................................... 11

V.      The Parties Agree that FSB's Accounting Claim (Count V) Should Be Dismissed. ....... 12

VI.    There Is No Basis for a Claim for Attorney's Fees. ........................................................ 12

VII.   FSB's Claim for Punitive Damages Should Be Dismissed. ............................................ 14

CONCLUSION..................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*188 LLC v. Trinity Indus., Inc.*,
  300 F.3d 730 (7th Cir. 2002) ................................................12

*Anthony v. Security Pacific Fin. Servs., Inc.*,
  75 F.3d 311 (7th Cir. 1996) ................................................15

*Baker Botts LLP v. ASARCO LLC*,
  135 S.Ct. 2158 (2015)................................................12, 13

*Board of Trustees, Sheet Metal Workers Nat. Pension Fund v. Elite Erectors, Inc.*,
  212 F.3d 1031 (7th Cir. 2000) ................................................10

*Bogie v. Rosenberg*,
  705 F.3d 603 (7th Cir. 2013) ................................................3, 6, 12

*Cavanaugh v. Standley Plastics, Inc.*,
  Case No. 14-cv-07581 ................................................13

*Chicago Florsheim Shoe Store Co. v. Cluett, Peabody & Co., Inc.*,
  826 F.2d 725 (7th Cir. 1987) ................................................3

*Crump v. Chicago Housing Authority*,
  1998 WL 164869 (N.D. Ill. Apr. 2, 1998) ................................................14

*Driveaway and Truckaway Serv., Inc. v. Aaron Driveway & Truckaway Co., Inc.*,
  781 F. Supp. 548 (N.D. Ill. 1991) ................................................14

*Gillman v. Burlington N. R.R. Co.*,
  878 F.2d 1020 (7th Cir. 1989) ................................................9

*Hickey v. O'Bannon*,
  *287 F.3d 656 (7th Cir. 2002)* ................................................2, 4, 8, 11

*In re First Farmers Financial Litigation*,
  2016 WL 5940933 (N.D. Ill. Oct. 13, 2016)................................................13, 14

*In re Gluth Bros. Const., Inc.*,
  424 B.R. 368 (Bankr. N.D. Ill. 2009) ................................................7

*In re Peregrine Fin. Grp. Customer Lit.*,
  2014 WL 4784113 (N.D. Ill. Sept. 25, 2014) ................................................7

*International Ins. Co. v. Certain Underwriters at Lloyd's London*,
    1991 WL 349914 (N.D. Ill. Sept. 16, 1991) ...........................................................14

*Kimble v. Donahoe*,
    511 F. App'x 573 (7th Cir. 2013) .........................................................................13

*Koch Refining v. Farmers Union Cent. Exchange, Inc.*,
    831 F.2d 1339 (7th Cir. 1987) .............................................................................10

*Krumlauf v. Benedictine University*,
    2010 WL 3075745 (N.D. Ill. Aug. 4, 2010) ..........................................................14

*McDermott, Will & Emery v. Ogle*,
    2001 WL 1465696 (N.D. Ill. Nov. 15, 2001) ........................................................14

*Paint Tech Intern., Inc. v. Case Co.*,
    1994 WL 258901 (N.D. Ill. June 9, 1994) ............................................................14

*Pernice v. City of Chicago*,
    237 F.3d 783 (7th Cir 2001) ..................................................................................8

*RehabCare Grp. East, Inc. v. Certified Health Mgmt., Inc.*,
    2007 WL 3334500 (N.D. Ill. Nov. 8, 2007) .......................................................3, 4

*Sirazi v. Gen. Mediterranean Holding, SA*,
    826 F.3d 920 (7th Cir. 2016) ............................................................................5, 12

*Slaney v. Int'l Amateur Athletic Fed'n*,
    244 F.3d 580 (7th Cir. 2001) ................................................................................8

*Tamayo v. Blagojevich*,
    526 F.3d 1074 (7th Cir. 2008) ..............................................................................8

*Tierney v. Vahle*,
    304 F.3d 734 (7th Cir. 2002) ..............................................................................12

*Verlan, Ltd. v. John L. Armitage & Co.*,
    695 F. Supp. 955 (N.D. Ill. 1988) ......................................................................14

*Zona v. Cab Serv. & Parts Corp.*,
    1986 WL 357 (N.D. Ill. July 30, 1986)................................................................14

**State Cases**

*Dass v. Yale*,
    2013 IL App. (1st) 122520....................................................................2, 3, 5, 9

*Douglas Theater Corp. v. Chicago Title & Trust Co.*,
    288 Ill. App. 3d 880 (1st Dist. 1997) ....................................................................1

*Hills of Palos Condo. Ass'n, Inc. v. I-Del, Inc.*,
255 Ill. App. 3d 448 (1st Dist. 1993) .................................................................3, 4

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
131 Ill. 2d 145 (1989) ...........................................................................................11

*Knickman v. Midland Risk Srvs.-Ill., Inc.*,
298 Ill. App. 3d 1111 (4th Dist. 1998)...................................................................5

*Mijatovich v. Columbia Sav. & Loan Ass'n*,
168 Ill. App. 3d 313 (1st Dist. 1988) ...................................................................15

*OnTap Premium Quality Waters, Inc. v. Bank of Northern Ill., N.A.*,
262 Ill. App. 3d 254 (2d Dist. 1994).................................................................4, 5

*Saletech, LLC v. East Balt, Inc.*,
2014 IL App (1st) 132639 ...................................................................................3, 4

*Time Savers, Inc. v. LaSalle Bank, N.A.*,
371 Ill. App. 3d 759 (2d Dist. 2007) ...............................................................7, 8, 9

**State Statutes**

805 ILCS 180/10-10 .......................................................................................2, 3, 4

**Rules**

Fed. R. Civ. P. 8 .......................................................................................................4

Fed. R. Civ. P. 9 ...............................................................................................7, 8, 9

Fed. R. Civ. P. 12 ...................................................................................................12

iv

For their reply in support of the Motion to Dismiss the Second Amended Complaint (the "Motion" or "Mot."),[1] the Defendants state as follows:

## ARGUMENT

### I. FSB Fails to State a Claim for Tortious Interference.

#### A. The Response mischaracterizes the Motion but does not dispute that a party cannot tortiously interfere with its own contract, as the SAC alleges.

Rather than address the Motion's arguments concerning Count I, FSB instead mischaracterizes the Motion, claiming (at 5) that it devotes four full pages to the contention that FSB failed to state a claim for tortious interference because "a defendant cannot tortiously interfere with his own contract." To the contrary, the Motion makes that point in a single sentence, necessitated by the SAC's allegations in its tortious interference claim (at ¶¶93-94) that Defendants breached their own Assignment Agreement and Loan and Security Agreement. (*See* Mot. at 7.) These allegations are entirely irrelevant to FSB's claim because, as FSB apparently concedes, one cannot tortiously interfere with his own contract. *Douglas Theater Corp. v. Chicago Title & Trust Co.*, 288 Ill. App. 3d 880, 884 (1st Dist. 1997).

FSB's attempt to distinguish *Douglas* (at 6) also relies on blatant mischaracterization. In *Douglas*, the plaintiff's complaint alleged tortious interference with contract, just as FSB's SAC does here. 288 Ill. App. 3d at 883. The *Douglas* defendant argued that the claim was insufficient because he "could not have tortiously interfered with his own contract," and the court agreed. *Id.* at 884 ("It is settled law that a party cannot tortiously interfere with his own contract; the tortfeasor must be a third party to the contractual relationship. Accordingly, Binstein cannot be liable for tortious interference with the Douglas Theater lease if he was a party thereto."). Although there were additional reasons why the *Douglas* court affirmed dismissal, as FSB notes,

---

[1] Capitalized terms are defined as in the Motion, unless otherwise specified.

that does not render its opinion distinguishable or inapplicable for the principle Defendants cited it here – namely, that a party cannot tortiously interfere with his own contract.

**B.** ***Dass* precludes a finding that Defendants are liable for LLCs' conduct by virtue of their membership or management thereof.**

FSB then claims (at 6) that Defendants cite *Dass v. Yale*, 2013 IL App. (1st) 122520, ¶3, for the proposition that "they cannot be liable for any misconduct of Opar since they were only the members of Opar." Once again, this is simply incorrect. As set forth in the Motion (at 8), *Dass* holds that LLC members <u>and</u> <u>managers</u> bear no liability for even fraudulent or tortious acts of the LLC and therefore FSB cannot hold Defendants personally liable for either Opar's or CCM's alleged misconduct in causing CIF to breach the Acknowledgement, regardless of whether Defendants were members, managers, or both. FSB does not even attempt to attack that proposition, nor does it address the fact that the Illinois legislature specifically amended the LLC Act to remove language that had explicitly provided for personal liability of LLC members. *Id.* at ¶41; 805 ILCS 180/10-10(a). Instead, FSB merely infers (at 6) that *Dass* does not preclude a finding of liability for fraud in Defendants' individual capacities or through the alter ego doctrine because *Dass* noted that the plaintiffs there were not arguing either of those theories. *See Dass*, 2013 IL App. (1st) 122520 at ¶36. This, too, is wrong. *Dass* never reached any such conclusion, which would be dicta in any event since that factual circumstance was admittedly not before the court. Moreover, it is irrelevant because (a) the SAC *only* alleges purported misconduct undertaken by Defendants in their capacities as members of LLCs[2] or by the LLCs themselves, and (b) as set forth in the Motion and *infra*, FSB fails to properly allege alter ego liability.

---

[2] The SAC admits (at ¶60) that Defendants "act[ed] at all relevant times through their instrumentalities, the Campbell Companies." Although FSB elsewhere claims that Defendants "individually" caused CIF to commit misconduct, this is an unsupported conclusion of law that the Court need not take as true. *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002); *see* SAC ¶65. Moreover, it is contradicted by the remainder of the SAC and its exhibits, which demonstrate that CIF was not managed or controlled by Defendants personally, but rather by other

2

### C.    FSB cannot evade *Dass* through an alter ego theory.

FSB makes no response whatsoever to the Motion's argument that the SAC's alter ego
pleading is deficient: namely, that (a) alter ego pleading cannot be based on "guess work,"
"conjecture," or "speculating" as to misuse of the corporate form (*Chicago Florsheim Shoe Store
Co. v. Cluett, Peabody & Co., Inc.*, 826 F.2d 725, 728 (7th Cir. 1987)); (b) an alter ego theory
will not survive a motion to dismiss where it is merely a "formulaic, skeletal conclusion"
(*RehabCare Grp. East, Inc. v. Certified Health Mgmt., Inc.*, 2007 WL 3334500, *3 (N.D. Ill.
Nov. 8, 2007)) or "unsupported by allegations of *specific* facts upon which the conclusions rest"
(*Hills of Palos Condo. Ass'n, Inc. v. I-Del, Inc.*, 255 Ill. App. 3d 448, 480 (1st Dist. 1993)
(emphasis in original)); and (c) the LLC Act prohibits imposing liability on the members or
managers of an LLC on the grounds that the LLC failed "to observe the usual company
formalities or requirements relating to the exercise of its business" (805 ILCS 180/10-10(c)). Nor
does FSB attempt to distinguish any of Defendants' supporting case law.  (*See* Mot. at 8-10.)
Instead, FSB devotes a mere two sentences (at 7) to claim that, although veil piercing is
admittedly disfavored by Illinois courts and "undertake[n] reluctantly," for some unidentified
reason "this does not mean that FSB's veil piercing allegations should be dismissed at the
pleading stage, particularly in light of the very specific allegations in the SAC that support a veil
piercing analysis."  This is woefully inadequate.

As an initial matter, myriad cases have held the exact opposite and dismissed alter ego
claims at the pleading stage that contained vastly more information than the pittance FSB pled
here.  *See Saletech, LLC v. East Balt, Inc.*, 2014 IL App (1st) 132639, ¶¶28-29 (allegations that
two entities commingled funds to defraud creditors, had a unity of interests so that their separate

---

LLCs. (SAC ¶13 & Ex. B Art. 5.06.)  Where the exhibits contradict a pleading, the exhibits will control. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013)

identities ceased, and had the same business address, and that one entity controlled the other, oversaw its day-to-day activities, kept all its profits, hired and set compensation for its employees, and amended its bylaws were insufficient to state alter ego theory and survive motion to dismiss); *RehabCare*, 2007 WL 3334500, *2 (holding alter ego allegations insufficient to survive motion to dismiss "even under the liberal pleading requirements of Federal Rule of Civil Procedure 8" and noting "[n]umerous courts have granted motions to dismiss because the party seeking to pierce the corporate veil failed to adequately plead the alter ego doctrine"); *Palos Condo.*, 255 Ill. App. 3d at 480 (dismissing alter ego theory where plaintiff alleged the defendant used corporate assets to satisfy personal obligations). And although FSB conclusorily states, with no support whatsoever, that its factual allegations are "very specific," this is belied by the SAC itself. As set forth in the Motion (at 10) – and not addressed by FSB in its Response – the SAC offers only barebones allegations, devoid of specific facts, that could be cut and pasted into literally any complaint against a corporate entity. Indeed, *Saletech* and *Palos Condo* both dismissed alter ego claims on allegations far more robust than those of the SAC.

FSB likewise fails to address the fact that even if its skeletal pleading were somehow sufficient, its alter ego allegations are irrelevant in any event because FSB cannot hold Defendants personally liable based on the failure of LLCs to "observe the usual company formalities or requirements relating to the exercise of its business" pursuant to the LLC Act. 805 ILCS 180/10-10(c). Yet every one of its formulaic alter ego allegations attempts to do just that.[3]

Finally, FSB does not contest the well-established principle of law that a defendant cannot tortiously interfere with the contract of his own alter ego. (*See* Mot. at 10, citing *OnTap Premium Quality Waters, Inc. v. Bank of Northern Ill., N.A.*, 262 Ill. App. 3d 254, 264 (2d Dist.

---

[3] The sole arguable exception is FSB's allegation that Defendants commingled unspecified funds with those of unspecified LLCs, but this is, once again, devoid of supporting facts and must therefore be disregarded. *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

1994) and *Knickman v. Midland Risk Srvs.-Ill., Inc.*, 298 Ill. App. 3d 1111, 1117 (4th Dist. 1998).) Instead, FSB merely observes (at 8) that *Knickman* was not decided at the pleading stage. Not only is this a meaningless difference, but *OnTap* (which FSB ignores altogether) <u>was</u> decided on a motion to dismiss. Both cases conclude that a plaintiff cannot tortiously interfere with the contract of its own alter ego, and *OnTap* dismissed a complaint that attempted to allege such interference – just as FSB does here. The case FSB cites, *Sirazi v. Gen. Mediterranean Holding, SA*, 826 F.3d 920 (7th Cir. 2016), on the other hand, does not involve tortious interference with the contract of the defendant's alleged alter ego. It is therefore inapposite.

In short, the Court should dismiss FSB's alter ego allegations because they fail to state any specific facts. Therefore, the tortious interference claim fails because FSB cannot evade the holding of *Dass* that an LLC's member or manager cannot be personally liable for the acts of the LLC. But even if the Court determined that FSB's alter ego allegations were somehow sufficient, notwithstanding ample Illinois case law to the contrary, the tortious interference claim would <u>still</u> fail because a defendant cannot tortiously interfere with the contract of his alter ego.

> **D.     The tortious interference claim is even weaker with regard to Kim.**

FSB fails to respond to the Motion's point (at 10) that the claim for tortious interference is even weaker with regard to Kim because it seeks to hold her liable based only on her admittedly non-controlling membership in Opar. FSB cannot dispute the fact that the SAC admits Craig was the sole manager of Opar, so it instead regurgitates nine inadequate allegations of the SAC that pertain to Kim - once again without addressing *any* of the deficiencies highlighted in the Motion - and concludes that Kim was therefore an "active participant" in the supposed tortious interference. (Resp. 7-8; *see* SAC ¶13.) But of the nine allegations, only three

could be construed to state misconduct, and not one of the allegations has *anything* to do with tortious interference by Kim (or, indeed, anyone else).[4]

First, FSB reiterates its claim that "the Campbells represented to FSB that … they individually owned the Collateral Account and the assets contained therein" in the Loan and Security Agreement, the Assignment Agreement, and the Acknowledgement, but as set forth in the Motion (at 5) and uncontested by the Response, there is no such representation in any of these documents. (*Compare* SAC ¶44 *with* SAC Exs. E-F.) Where exhibits to a pleading contradict a plaintiff's allegations, the exhibits control, "even when considering a motion to dismiss." *Bogie*, 705 F.3d at 609. Nor does FSB address the Motion's point that it is axiomatic that a securities fund like CIF owns the securities in that fund – otherwise, it would be impossible for the fund to trade securities, which is its entire purpose.

Second, FSB repeats its claim that "at no time did the Campbells … notify FSB that the Campbells were not the owners of the Collateral Account or that the assets contained in the Collateral Account were not owned by them." (SAC ¶45.) But as set forth above, Defendants never represented that they individually owned the Collateral Account and its assets in the first place. To the contrary, and as FSB admits, Defendants truthfully represented at all times that *CIF* held the Collateral Account and its assets. (SAC ¶44.) Moreover, as the Motion points out (and FSB once again fails to address), neither the Assignment nor the Acknowledgement obligates Defendants to inform FSB of anything.

---

[4] By contrast, the allegations FSB highlights at ¶¶34-36, 41, 48, and 50 are mere background information and do not claim any wrongdoing. Moreover, the allegation that "the Campbells controlled the CIF and the Collateral Account based on their control of Opar" (at ¶41) is contradicted by FSB's admission (at ¶13) that Craig was the *sole* manager of Opar. Similarly, although ¶50 states that Defendants did not comply with the Default Judgment before filing for bankruptcy, (a) the Default Judgment has been vacated; (b) there is nothing improper with declaring bankruptcy; and (c) FSB does not dispute that it failed to ever serve the Default Judgment on Defendants.

Third, FSB reasserts that "[t]he cash so diverted by the Campbells was spent by them in large measure to cover their personal living expenses." (SAC ¶85.) Even assuming, *arguendo*, the truth of this allegation, the fact that Kim spent money to cover her living expenses simply does not support FSB's conclusion that she was an active participant in tortiously interfering with a contract. In any event, as set forth in the Motion, CIF paid the supposedly "diverted" cash in the form of fees pursuant to the partnership agreement and Private Offering Memorandum. (Mot. Ex. 1 at Ex. D, §§4.01-02 & Ex. E, p. 13.) In short, none of FSB's regurgitated allegations support its conclusion that Kim was an active participant in tortious interference with a contract.

## II.     FSB Fails to State a Claim for Aiding and Abetting.

FSB's Response repeatedly mischaracterizes the Motion's arguments on FSB's failure to state a claim for aiding and abetting, instead addressing only the straw man arguments that FSB misattributes to Defendants. First, FSB contends that Defendants "mistakenly judge the SAC by the more stringent Illinois' fact-pleading standards *[sic]*" because they cite *Time Savers, Inc. v. LaSalle Bank, N.A.*, 371 Ill. App. 3d 759, 772 (2d Dist. 2007). Once again, wrong. The Motion cites *Time Savers* for the elements of an aiding and abetting claim (at 11) and the proposition that it is impossible to aid and abet one's own alter ego under Illinois law (at 2). By contrast, the Motion cites *In re Gluth Bros. Const., Inc.*, 424 B.R. 368, 374 (Bankr. N.D. Ill. 2009), and *In re Peregrine Fin. Grp. Customer Lit.*, 2014 WL 4784113, *9 (N.D. Ill. Sept. 25, 2014) – two federal cases – for the pleading standard.

Second, FSB makes no response to the Motion's argument that although the aiding and abetting claim is subject to the heightened pleading requirements of Rule 9(b) and therefore must allege the "who, what, when, and where" of the supposed fraud, the SAC notably omits any details whatsoever of the misrepresentations Defendants supposedly made to aid and abet fraud. (*See* SAC ¶¶101, 111.) Instead, the Response conclusorily states (at 5) that "FSB's fraud-based

allegations satisfy the pleading requirements of Rules 9(b) *[sic]* of the Federal Rules of Civil Procedure because they provide sufficient detail regarding the Campbells' false representations and omissions." But saying it does not make it so. FSB provides no support at all for its conclusion,[5] which must therefore be disregarded. *Hickey*, 287 F.3d at 658.

Third, FSB inexplicably claims (at 9) Defendants "assert[ed] that there is no aiding and abetting liability in Illinois." This, too, is incorrect. Nowhere in the Motion do Defendants make any such assertion. To the contrary, as set forth above, the Motion cites *Time Savers* (at 11) for the elements of an aiding and abetting claim under Illinois law.

Fourth, FSB argues (at 9) that "Illinois courts have recognized that the same set of facts can support claims based on both contract and tort principles." Defendants never argued otherwise. The problem here is that the SAC does *not* allege any facts concerning the supposed misrepresentation to support its claim. (*See* SAC ¶¶101, 111.)

Fifth, FSB contends – again, with no supporting authority whatsoever – that it "is patently inappropriate at the pleading stage" to dismiss based on the fact the SAC alleges Defendants aided and abetted their own alter ego. (Resp. at 9.) This is simply untrue. It is eminently appropriate to dismiss a complaint where the plaintiff has effectively pled himself out of court, as FSB has here. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) (a plaintiff "pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits."); *Pernice v. City of Chicago*, 237 F.3d 783, 787-88 (7th Cir 2001) ("Because Pernice has pled himself out of court … we affirm the district court's dismissal of his second amended complaint."). Here, it would be necessary to contradict the SAC's alter ego allegations for FSB to prevail on the merits of its tortious interference, aiding and abetting, and

---

[5] FSB does cite to *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001), with no explanation. That case affirmed the trial court's dismissal of an insufficiently pled fraud-based claim, and provides FSB no support.

conspiracy claims. Moreover, the entire purpose of a motion to dismiss is to halt litigation where the plaintiff has not adequately pled the elements of his cause of action. *Gillman v. Burlington N. R.R. Co.*, 878 F.2d 1020, 1024 (7th Cir. 1989) (affirming dismissal where complaint failed to allege an element of its cause of action). Tellingly, FSB does not dispute that a party cannot aid and abet its own alter ego, or that a necessary element of an aiding and abetting claim is that the defendant aid and abet a third party. *See Time Savers*, 371 Ill. App. 3d at 772. Thus, its aiding and abetting claim must be dismissed because the SAC does not allege the existence of a true third party, but instead alleges, contrary to Illinois law, that Defendants could be found liable for aiding and abetting their own alleged alter ego.

Finally, FSB entirely fails to address a litany of Defendants' other arguments:

- The SAC claims Defendants allegedly aided CIF's liquidation of the Collateral Account "through their instrumentalities, CCM and Opar" (¶¶101, 111), but it cannot hold Defendants liable for the acts of LLCs under *Dass* and the LLC Act, as set forth above;

- FSB fails to properly allege alter ego liability and thus cannot make an end run around the protections of *Dass* and the LLC Act;[6]

- Aiding and abetting liability requires that the aided act be wrongful, but the SAC alleges (at ¶103) that CIF "implemented this fraudulent scheme … by representing that it was the rightful owner of the InCapS Securities," which is not wrongful because CIF always owned the securities (SAC ¶54; Mot. Ex. 1 at Ex. B, ¶¶22, 24);

- FSB fails to provide critical information concerning CIF's representation of ownership, such as what specific representation was made, to whom, how, where, and when it occurred, and thus runs afoul of Rule 9(b);

- FSB claims "Craig made continuous material misrepresentations to FSB," but fails to state what those misrepresentations allegedly were, when they occurred, to whom they were made, how they were made, or where they occurred, and likewise fails to state that *Kim* made *any* misrepresentations whatsoever; and

- FSB fails to even allege the second element of an aiding and abetting claim, namely Defendants' awareness of their role as part of the supposed fraudulent scheme.

---

[6] Notably, nothing precludes Defendants from attacking the SAC in multiple ways, as FSB wrongly claims (at 2). That is, they can argue both that FSB failed to properly allege alter ego liability and that if FSB *did* properly allege alter ego liability, the claim would still fail because a party cannot aid and abet, or conspire with, or tortiously interfere with the contract of, its own alter ego.

Each of these represents a separate and sufficient reason to dismiss the aiding and abetting claim.

### III.   FSB Fails to State a Claim for Conspiracy

In response to the Motion's argument that the conspiracy claim must be dismissed because a party cannot conspire with its own alter ego, FSB now claims for the first time (at 10) that "FSB does not allege that CIF is the alter ego of the Campbells and the shell companies comprising the Campbell Companies," but is instead "a separate, passive entity that was controlled by the Campbells for purposes of implementing their scheme[.]"  This is both illogical and false.  First, the SAC clearly defines CIF as one of the Campbell Companies, and every one of the formulaic recitations concerning an alter ego theory pertains to *all* of the Campbell Companies.  (SAC ¶¶12(i), 22, 26-33.)  Thus, the SAC attempts to claim that CIF is Defendants' alter ego.  Second, even the Response continues to allege that CIF was a passive entity controlled by Defendants.  Because FSB has attempted to plead that CIF is an alter ego of Defendants and does not contest the fact that a party cannot conspire with its own alter ego, the conspiracy claim must be dismissed.

FSB also claims the cases upon which Defendants rely are somehow distinguishable "because in those cases, the complaints alleges *[sic]* that 'all of the Defendants are essentially the same entity.'"  (Resp. at 10.)  This is not a distinction at all, but instead reflects FSB's apparent fundamental misunderstanding of what it means to allege that one entity is the alter ego of another: "a contention that *A* is *B*'s 'alter ego' asserts that *A* and *B* are *the same entity*."  *Board of Trustees, Sheet Metal Workers Nat. Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1038 (7th Cir. 2000) (emphasis in original); *see Koch Refining v. Farmers Union Cent. Exchange, Inc.*, 831 F.2d 1339, 1344 (7th Cir. 1987) ("The alter ego doctrine is used in certain situations to displace the basic principle of the law of corporations that a corporation and its shareholders [or an LLC and its members] are separate legal entities with limited liabilities.").   Therefore,

Defendants' case law is not distinguishable and FSB cannot escape the numerous holdings that a party cannot conspire with its own alter ego or agent. Because FSB makes no other argument in support of its conspiracy claim, that count must be dismissed.

## IV. FSB Fails to State a Claim for Unjust Enrichment

As set forth in the Motion (at 13), the claim for unjust enrichment fails because "FSB utterly fails to demonstrate that Defendants absconded with any unjust benefit." FSB quotes this line and then insists that to make their argument, Defendants ignored FSB's allegations that they "diverted the proceeds of the sale of the InCapS Securities into Buoyant 'hoping to obtain a board seat and employment for Craig'" and diverted $200,000 to pay for their living expenses. This is both wrong and disingenuous. As FSB well knows, Defendants addressed these allegations in the very same paragraph of the Motion as the line FSB quoted: <u>First</u>, the SAC admits (at ¶79) that the proceeds of the sale of the InCapS Securities were used *by CIF* to purchase Buoyant stock *issued in CIF's name*, and thus were not used for Defendant's benefit but rather by and for CIF. (*See* Mot. at 13.) The SAC does not allege that Defendants obtained any benefit whatsoever through the Buoyant purchase. Whether they were hoping to obtain some benefit is utterly irrelevant[7] – the fact is that they did not receive and retain any such benefit, which is an essential element of an unjust enrichment claim. *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 161 (1989).

<u>Second</u>, with regard to the supposedly "diverted" cash, CIF paid the remaining $200,000 in fees pursuant to the partnership agreement and Private Offering Memorandum. (Mot. Ex. 1 at Ex. D, §§4.01-02 & Ex. E, p. 13.) Rather than address this fact, FSB instead contends that the

---

[7] Moreover, the Court need not take this allegation as true because it is an unsupported and conclusory piece of speculation. *Hickey*, 287 F.3d at 658. Clearly FSB cannot know what Defendants hoped for, and it alleges no facts in support of the contention that CIF invested funds in Buoyant because Defendants were supposedly "hoping to obtain a board seat and employment for Craig." (SAC ¶82.)

Court cannot consider it because the Court must accept FSB's allegations as true for the purposes of ruling on the Motion. Once again, FSB fails to address Defendants' point that "[i]t is also well-settled that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to its claim. Such documents may be considered [] in ruling on the motion to dismiss" because otherwise "the plaintiff evade dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proved that his claim had no merit." *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002); *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002). And where those exhibits contradict the plaintiff's allegations, as in this case, the exhibits control. *Bogie*, 705 F.3d at 609.

Here, it would be inequitable to allow FSB to survive the Motion through artful pleading – namely, accusing Defendants of wrongfully retaining $200,000 when documents FSB conveniently failed to attach to the SAC demonstrate that, to the contrary, CIF properly paid that cash in the form of management and other fees. FSB's reliance on *Sirazi* is therefore unavailing because there one party actually diverted money owed to the other, which the relevant documents show is not the case here.

## V. The Parties Agree that FSB's Accounting Claim (Count V) Should Be Dismissed.

The Response admits that an accounting is not a separate cause of action under Illinois law but rather a remedy, and states that "FSB does not object to dismissal of Count V." It should therefore be dismissed with prejudice.

## VI. There Is No Basis for a Claim for Attorney's Fees.

FSB does not address the existence of the American Rule, which unequivocally states that each litigant must pay its own attorney's fees regardless of outcome unless a statute or contract provides otherwise, nor does FSB contest that the Supreme Court has refused to "deviate from the American Rule absent explicit statutory authority." *Baker Botts LLP v.*

*ASARCO LLC*, 135 S.Ct. 2158, 2164 (2015). As FSB concedes, there is no such contract or statute providing for fees here. Instead, FSB argues that its prayer for attorney's fees should stand anyway because (a) *Baker Botts* "arose in the context of a bankruptcy case and whether a the *[sic]* debtor's professionals should be paid for contesting objections to their own fee applications," (b) Defendants' counsel sought attorney's fees on behalf of a receiver in unrelated litigation, and (c) striking that remedy at the pleading stage is inappropriate. (Resp. at 12.) Each of these falls flat.

First, it is true that *Baker Botts* held the Bankruptcy Code does not permit bankruptcy courts to award attorney fees to counsel employed by the bankruptcy estate for work performed in defending a fee application in court. That fact does not in any way undermine the *Baker Botts* holding concerning the "bedrock principle" of the American Rule, nor does it support FSB's request for fees where, as in the unsuccessful *Baker Botts* fee request, no statute or contract provides for such fee shifting. 135 S.Ct. at 2164.

Second, it is likewise true that Defendants' counsel sought attorney's fees in connection with certain claims in *In re First Farmers Financial Litigation*, 2016 WL 5940933 (N.D. Ill. Oct. 13, 2016), but there the contract provided for attorney's fees. (*See* First Amended Complaint in *Cavanaugh v. Standley Plastics, Inc.*, Case No. 14-cv-07581 (Hon. Amy J. St. Eve) at Ex. A ¶7(E) & Ex. B ¶2, attached as **Exhibit 1** hereto.)[8] It is therefore in no way "incongruous" that Defendants' counsel sought attorney's fees where the contract provided for them, while simultaneously seeking to dismiss such a prayer here where there is no such contractual fee shifting provision. The same legal principle – the American Rule – dictates the result in both

---

[8] This Court may take judicial notice of pleadings before other courts. *Kimble v. Donahoe*, 511 F. App'x 573, 575 n.2 (7th Cir. 2013).

cases. Moreover, the *First Farmers* receiver represents the receivership estate and seeks to recover on behalf of defrauded investors, whereas FSB seeks to put money in its own pockets.

<u>Third</u>, FSB advances no argument whatsoever for the supposed inappropriateness of dismissing a prayer for attorney's fees under the American Rule. Indeed, Illinois courts routinely dismiss or strike such inappropriate attorney's fees requests at the pleading stage. *See Krumlauf v. Benedictine University*, 2010 WL 3075745, *2 (N.D. Ill. Aug. 4, 2010); *Paint Tech Intern., Inc. v. Case Co.*, 1994 WL 258901, *3-4 (N.D. Ill. June 9, 1994); *International Ins. Co. v. Certain Underwriters at Lloyd's London*, 1991 WL 349914, *11 (N.D. Ill. Sept. 16, 1991); *Verlan, Ltd. v. John L. Armitage & Co.*, 695 F. Supp. 955, 959 (N.D. Ill. 1988). So too should the Court dismiss the request here, with prejudice.

## VII. FSB's Claim for Punitive Damages Should Be Dismissed.

FSB's defense of its request for punitive damages fares no better than its request for attorneys' fees. Once again, it does not address Defendants' case law establishing that FSB is not entitled to punitive damages, but instead claims – once again, with no support whatsoever – that it is nevertheless somehow inappropriate to dismiss the request at the pleading stage. (Resp. at 12.) But Illinois courts consistently grant motions to dismiss inappropriate requests for punitive damages. *McDermott, Will & Emery v. Ogle*, 2001 WL 1465696, *5-6 (N.D. Ill. Nov. 15, 2001); *Crump v. Chicago Housing Authority*, 1998 WL 164869, *4 (N.D. Ill. Apr. 2, 1998); *Driveaway and Truckaway Serv., Inc. v. Aaron Driveway & Truckaway Co., Inc.*, 781 F. Supp. 548, 553 (N.D. Ill. 1991); *Zona v. Cab Serv. & Parts Corp.*, 1986 WL 357, *2 (N.D. Ill. July 30, 1986).

FSB also complains that Defendants' counsel sought punitive damages in the *First Farmers* litigation but, as illustrated in the pleadings attached hereto as Exhibit A, the *First Farmers* receiver properly pled the type of egregious circumstances that justify punitive

damages. Here, on the other hand, FSB merely states (at 12) that the Court should not dismiss the request for punitive damages because the SAC alleges "deliberateness [] in respect of the Campbells' misconduct." But as set forth in the Motion (at 15), alleging intentional tortious conduct is "insufficient under Illinois law to claim punitive damages" (*Anthony v. Security Pacific Fin. Servs., Inc.*, 75 F.3d 311, 316 (7th Cir. 1996)), as is an allegation that a defendant acted in bad faith or took the plaintiff's money and refused to return it (*Mijatovich v. Columbia Sav. & Loan Ass'n*, 168 Ill. App. 3d 313, 316 (1st Dist. 1988)). FSB never addresses either case.

## CONCLUSION

For all of these reasons, Defendants respectfully request that the Court: (i) dismiss the SAC (in reality, FSB's fourth complaint) with prejudice for the SAC's failure to state a claim; (ii) alternatively, strike FSB's requests for attorney's fees and punitive or exemplary damages; and (iii) grant such other just and equitable relief as the Court deems appropriate.

Respectfully submitted,

Craig Lyle Campbell and Kim Ann Webster-Campbell

Dated:  November 18, 2016

By:  /s/ Steven B. Towbin

One of their attorneys

Steven B. Towbin (#2848546)
Laura E. Caplin (#6297784)
David R. Doyle (#6303215)
Shaw Fishman Glantz & Towbin LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60654
P:  (312) 541-0151
F:  (312) 980-3888

## <u>CERTIFICATE OF SERVICE</u>

       Steven B. Towbin certifies that he caused to be served a true copy of **Defendants' Reply In Support Of Their Motion To Dismiss The Second Amended Complaint** upon the attached Electronic Mail Notice List through the ECF System which sent notification of such filing via electronic means on November 18, 2016.

                                   /s/ Steven B. Towbin

# Mailing Information for Case 1:16-cv-05258
# First Security Bank v. Campbell et al.

## Electronic Mail Notice List

- **Laura Elizabeth Caplin**
  lauracaplin28@gmail.com
- **David Richard Doyle**
  ddoyle@shawfishman.com,kjanecki@shawfishman.com
- **Richard H. Fimoff**
  rfimoff@rsplaw.com,fb@rsplaw.com
- **Steven R. Jakubowski**
  sjakubowski@rsplaw.com
- **Steven Bennett Towbin**
  stowbin@shawfishman.com,cknez@shawfishman.com
- **Robert J. Trizna**
  rtrizna@rsplaw.com,tstalling@rsplaw.com