IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FIRST SECURITY BANK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 16 C 5258 |
| ) | |
| CRAIG LYLE CAMPBELL and KIM A. ) | |
| WEBSTER-CAMPBELL, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

     First Security Bank filed suit against Craig Campbell and Kim Webster-Campbell to recover collateral allegedly assigned to the bank to secure a loan. First Security alleges that the Campbells tortiously interfered with one of the bank's contracts relating to the loan (count 1); aided and abetted fraud (count 2); committed civil conspiracy (count 3); and were unjustly enriched (count 4). First Security also alleges that it is entitled to an accounting to determine the value of the fraud and unjust enrichment (count 5). The Campbells have moved to dismiss all of First Security's claims. For the reasons stated below, the Court dismisses the tortious interference claim with regard to Kim Webster-Campbell and dismisses the claims for aiding and abetting fraud and accounting with regard to both Campbells but otherwise denies the motion to dismiss.

### Background

     Craig Campbell and Kim Webster-Campbell live in Lake Forest, Illinois. Some time prior to 2008, they formed multiple business entities. The Campbells first

established Opar, LLC. Craig and Kim each had a 50% ownership interest in Opar, but Craig acted as the sole manager. The Campbells also established Campbell Capital Management LLC (CCM) and Campbell Capital Advisors, LLC (CCA). Both are member-managed LLCs. Opar is the sole member of both CCM and CCA. The Campbells also established Campbell Income Fund L.P. (CIF), a limited partnership. From 2008 through early 2011, the Campbells owned 100% of the limited partnership interest in CIF. Since 2012, their ownership has been reduced to 77%. CCM is the sole general partner of CIF. As of the date First Security filed this complaint, CCA was no longer an active entity.

First Security is a state bank organized and chartered under the laws of Arkansas. In February 2008, it loaned the Campbells $1.5 million. The Campbells executed a promissory note and signed a loan agreement with First Security, both of which provided for joint and several liability. The loan agreement provided that certain of the Campbells' assets would serve as collateral for the loan. Specifically, the agreement provided as collateral "account no. 1 established at and held by the Campbell Income Fund, L.P." including the "INCAPS FUNDING II" securities held in that account. Second Am. Compl., Ex. E at 2. (The Court will refer to this account as the Account.) The Account was located at First Tennessee Bank and was described more particularly in the parties' separate assignment agreement. The assignment agreement stated that the Campbells:

> assign[ ], transfer[ ] and set[ ] over to First Security Bank . . . the following investment account: (i) Craig L. Campbell and Kim A. Webster-Campbell, account no. 1 established at and held by the Campbell Income Fund, L.P. . . . in which account is held among other securities and monies, the following securities and accounts: (i) INCAPS Funding II, CUSIP No. 45325VAE4 . . ., owned by Craig L. Campbell and Kim A. Webster-

2

Campbell.

*Id.*, Ex. F at 1.  The assignment agreement gave First Security the sole right to obtain possession of the Account and its contents and to withdraw or convey any of the property in the Account.  The Campbells also executed an acknowledgement agreement on behalf of CIF, CCM, and Opar.  This agreement states that CIF acknowledged the assignment of the Account as collateral and agreed to be bound by the terms and conditions of the assignment agreement.  *Id.* at 6.

First Security alleges that through these agreements, the Campbells continuously represented that they owned the Account and its assets as individuals, that CIF was only holding the Account, and that CIF did not have an ownership interest the Account.  First Security alleges that the securities held in the Account (the InCapS securities) had a face value of $1 million.

In June 2010, First Security brought suit against the Campbells in Arkansas state court alleging they had defaulted under the loan agreement.  In September 2010, First Security obtained a default judgment against the Campbells for $1,142,992.67.  The judgment also required the Campbells to surrender the Account property or any proceeds of the property to First Security.  Despite this, the Campbells never surrendered any property.  In November 2010, the Campbells filed for bankruptcy in Illinois.  In June 2013, the trustee moved to abandon the Campbells' 77% limited partnership interest in CIF.  The bankruptcy judge granted this motion and, in September 2013, authorized the trustee to abandon the bankruptcy estate's interest in the InCapS securities.  The bankruptcy judge also discharged the Campbells' personal liability on the loan agreement but did not adjudicate First Security's interest in the collateral.  First Security alleges that, at the time of these orders, the InCapS securities

3

had a market value of approximately $600,000. First Security further alleges that the Account itself contained approximately $91,560.09 in accrued dividends from the InCapS securities.

First Security alleges that, following these events, Craig made several misrepresentations to First Security, in which he indicated that he intended to turn over the assets in the Account to the bank. Instead, First Security alleges, the Campbells used their control over Opar and CCM to cause CIF to transfer the InCapS securities out of the Account and into a new account in CIF's name at Stifel, Nicolaus & Co., even though CIF did not own the securities. The Campbells then allegedly caused Stifel to sell the securities as soon as they were in the Stifel account. This sale resulted in $601,353.43 in cash proceeds. The Campbells then directed the transfer of $600,000 into another CIF account at Bridgeview Bank. In November 2013, Craig allegedly told Bridgeview Bank to transfer $500,000 to Buoyant Concepts, Inc. in exchange for 2,500,000 shares of Buoyant common stock. Buoyant issued the stock in CIF's name. The Campbells then transferred $200,000 from the Account (that is, the First Tennessee account) and the Bridgeview Bank account to other bank accounts belonging to CIF, CCM, and the Campbells individually. First Security alleges that the Campbells used this money to cover personal living expenses. Throughout this time, First Security alleges that it was unaware of the Campbells' conduct regarding the InCapS securities and proceeds. First Security alleges that it learned of this conduct through the Bankruptcy Rule 2004 examination in the Campbells' bankruptcy estate, which took place in 2014.

First Security filed the present suit in an attempt to recover the value of the

4

collateral pledged under the loan agreement. In count 1, First Security alleges that the Campbells tortiously interfered with the acknowledgement agreement between CIF and First Security by using their control of Opar and CCM to cause CIF to transfer the collateral assets. In count 2, First Security alleges that the Campbells aided and abetted a fraudulent scheme to mislead the bank about the collateral assets and to divert the assets for the Campbells' personal benefit. In count 3, First Security alleges that the Campbells and their companies engaged in civil conspiracy to defraud the bank. In count 4, First Security alleges that the Campbells were unjustly enriched by the scheme to divert assets away from the bank. Finally, in count 5, First Security alleges that it is entitled to an accounting to determine the amount of money that was fraudulently transferred.

## Discussion

When reviewing a motion to dismiss, the Court accepts all allegations in plaintiff's complaint as true and draws all permissible inferences in plaintiff's favor. *Healy v. Metro. Pier and Exposition Auth.*, 804 F.3d 836, 838 (7th Cir. 2015). Though detailed factual allegations are unnecessary, the complaint must contain enough facts to state a claim to relief that is plausible on its face. *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). A plaintiff's complaint must provide "allegations that raise a right to relief above the speculative level." *Redd v. Nolan*, 663 F.3d 287, 291 (7th Cir. 2011).

**I.    Tortious interference claim**

In count 1, First Security alleges that both Craig and Kim tortiously interfered with contracts to which the bank is a party. To state a claim for tortious interference, a plaintiff must allege (1) the existence of a valid contract between plaintiff and another;

5

(2) defendant's awareness of this contract; (3) defendant's intentional and unjustified inducement of a breach; (4) a breach by the other contracting party; and (5) damages. *Koehler v. Packer Grp., Inc.*, 2016 IL App (1st) 142767, ¶ 42, 53 N.E.3d 218, 236–37.

The Campbells first argue that First Security has alleged that they tortiously interfered with the loan agreement they signed as individuals and, because an individual cannot tortiously interfere with his own contract, this claim must be dismissed. Defs.' Mem. in Supp. of Mot. to Dismiss at 7. It is true "that a party cannot tortiously interfere with his or her own contract." *Koehler*, 2016 IL App (1st) 142767 at ¶ 43, 53 N.E.3d at 237. But First Security has not alleged that the Campbells tortiously interfered with the loan agreement. Rather, it alleges that the Campbells interfered with the acknowledgement agreement between CIF and First Security. Second Am. Compl. ¶¶ 93, 95. The Campbells as individuals were not parties to the acknowledgement agreement and therefore can be liable for tortious interference.

The Campbells also argue, in effect, that First Security has alleged contradictory theories, which should defeat its claim for tortious interference. First Security appears to assert that the Campbells should be subject to personal liability for the conduct of their companies through a theory of piercing the corporate veil, as well as personal liability for their conduct as individuals. Second Am. Compl. ¶¶ 27–33. The Campbells argue that, if First Security is successful on its veil-piercing theory, they and their companies would be regarded as a single entity. Defs.' Mem. in Supp. of Mot. to Dismiss at 10–11. As such, First Security argues, the Campbells effectively would be parties to the acknowledgement agreement and therefore could not tortiously interfere with their own contract. *Id.* But in federal court, a party may plead claims in the

6

alternative, either in a single count or in separate counts, and may also plead inconsistent claims. Fed. R. Civ. P. 8(d)(2), (3). First Security is therefore not required to choose one and only one theory of the case at this stage in the proceedings. To put it another way, First Security has not bound itself to its veil-piercing theory, and thus it has not painted itself into a corner on its tortious interference claim as the Campbells contend. In short, the fact that First Security has alleged liability under a theory of piercing the corporate veil does not defeat its tortious interference claim.

The Campbells also argue that they cannot be liable for their conduct because they were acting through Opar and CCM as managers and members of those entities and therefore are immune from personal liability under 805 ILCS 180/10-10(a). Defs.' Mem. in Supp. of Mot. to Dismiss at 7-8. That statute, however, provides only that a member or manager of an LLC is not personally liable for obligations of the company "*solely* by reason of being or acting as a member or manager." 805 ILCS 180/10-10(a) (emphasis added). First Security does not allege that the Campbells are liable for tortious interference merely because they owned Opar or because they acted as members or managers. Instead, First Security alleges that the Campbells, through their personal conduct, manipulated the entities under their control to enrich themselves as individuals. *See* Second Am. Compl. ¶¶ 60–87. The statute does not prevent them from being held liable for their conduct as individuals to enrich themselves at First Security's expense.

First Security, however, has adequately alleged only that Craig tortiously interfered with the acknowledgement agreement. Specifically, First Security alleges that Craig manipulated Opar, CCM, and CIF, but it has failed to allege that Kim did anything

7

of the kind. In particular, it has not described any involvement by Kim in the alleged contractual interference, nor has it alleged how, if at all, she participated in the decision to sell the InCapS securities and transfer the proceeds to different accounts. The fact that Kim may have benefitted from the transfer of the proceeds, as First Security alleges, is insufficient without more to render her liable for tortious interference.

## II. Aiding and abetting

First Security alleges that the Campbells aided and abetted the fraud committed by CIF when it transferred and sold First Security's collateral. Second Am. Compl. ¶¶ 100–14. To state a claim for aiding and abetting, a plaintiff must allege that (1) the party whom defendant aids performs a wrongful act which causes an injury; (2) defendant is aware of his role at the time that he provides assistance; and (3) defendant knowingly and substantially assisted the violation. *Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 27–28, 799 N.E.2d 756, 767 (2003). Plaintiffs alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (describing this standard as a "heightened pleading requirement").

First Security has failed to meet this heightened pleading standard. First Security alleges that "Craig made continuous material misrepresentations to [First Security] regarding his intention to honor [First Security's] security interest." Second Am. Compl. ¶ 102. First Security also refers repeatedly to "[t]he Campbells' misrepresentations." *Id.* ¶ 107. But it has not alleged the content of these misrepresentations or when or to whom they were made. Without such details, First Security has failed to state its aiding and abetting claim with the requisite particularity.

8

### III.     Civil conspiracy

In count 3, First Security alleges that Craig and Kim conspired with Opar, CCM, and CIF to defraud First Security of its collateral. To state a claim for civil conspiracy, a plaintiff must allege "(1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Redelmann v. Claire Sprayway, Inc.*, 375 Ill. App. 3d 912, 923, 874 N.E.2d 230, 241 (2007). The Campbells again argue for dismissal on the ground that First Security has alleged that the Court should pierce the corporate veil. The Campbells argue that if this theory succeeds, they and the companies would be considered a single entity, and there can be no conspiracy involving a single entity. As discussed above, Rule 8(d entitles First Security to plead claims and theories in the alternative. Thus First Security's alternative veil-piercing allegations do not defeat its claim of civil conspiracy.

The Campbells' only other argument is that First Security failed to allege any tortious conduct by Kim individually. Defs.' Mem. in Supp. of Mot. to Dismiss at 13. Civil conspiracy, however, requires only that one of the conspirators committed an overt tortious or unlawful act. *Redelmann*, 375 Ill. App. 3d at 923, 874 N.E.2d at 241. And First Security has adequately alleged that Craig wrongfully deprived the bank of the collateral to which it was entitled. Therefore the Campbells are not entitled to dismissal of the civil conspiracy claim.

### IV.     Unjust enrichment

First Security also alleges that the Campbells were unjustly enriched by their

9

conduct. Specifically, First Security contends that the Campbells deposited some of the proceeds from their scheme into their personal checking account and used this money to pay for personal expenses. Second Am. Compl. ¶¶ 135–36. These allegations are sufficient to state a claim for unjust enrichment.

A claim of unjust enrichment requires that the defendant retained a benefit to the plaintiff's detriment and that the defendant's retention of that benefit violates fundamental principles of justice and equity. *Nat'l Union Fire Ins. Co. v. DiMucci*, 2015 IL App (1st) ¶ 67, 34 N.E.3d 1023, 1043. First Security has adequately alleged that the Campbells retained proceeds from collateral rightfully owed to First Security and that they had no rights in the collateral. Second Am. Compl. ¶¶ 127, 130, 135–36.

The Campbells argue that the majority of the proceeds from the sale of the collateral was used by CIF to buy stock issued in its own name and therefore that the Campbells individually did not receive a benefit. Defs.' Mem. in Supp. of Mot. to Dismiss at 13. First Security alleges, however, that the Campbells distributed $200,000 to various business and personal accounts and used these accounts to pay personal expenses. Second Am. Compl. ¶¶ 84–85, 135–36. First Security has therefore adequately alleged that the Campbells personally retained a benefit.

The Campbells further argue that First Security has again failed to allege individual conduct by Kim that would justify imposing liability. But First Security is only required to allege that Kim retained a benefit to the bank's detriment. First Security has met this standard by alleging that Kim used the proceeds to pay her personal expenses. The Campbells also argue that First Security fails to identify what conduct by Craig is at issue under this claim. Defs.' Mem. in Supp. of Mot. to Dismiss at 14. But again, First

10

Security has adequately alleged that Craig retained a benefit to the bank's detriment by manipulating CIF into selling the InCapS securities and distributing the proceeds to himself and to Kim.

## V. Accounting

In count 5, First Security alleges that it is entitled to an accounting to determine how much money was lost due to the alleged scheme. Second Am. Compl. ¶¶ 140–50. The Campbells argue primarily that an accounting is a remedy and not an independent cause of action. Defs.' Mem. in Supp. of Mot. to Dismiss at 14. First Security does not object to the dismissal of this claim, noting that it also requested an accounting in its prayer for relief. Pl.'s Resp. at 11. The Court therefore dismisses count 5 as a stand-alone claim.

## VII. Attorney's fees

The Campbells have moved to strike First Security's request for attorney's fees and costs. *See* Second Am. Compl. ¶ 150(J). Under Illinois law, the prevailing party bears its own costs of litigation unless otherwise specified by statute or contract. *Steiner Elec. Co. v. Maniscalco*, 2016 IL App (1st) 132023, ¶ 75, 51 N.E.3d 45, 63. First Security has not pointed to any statute or contractual provision that would authorize fee-shifting in this case. The Court therefore grants the Campbells' motion to strike the request for attorney's fees.

## VIII. Punitive damages

The Campbells have also moved to strike First Security's request for punitive damages against the Campbells for their willful conduct in misappropriating the bank's collateral. To recover punitive damages, a plaintiff must establish "gross fraud or other

extraordinary or exceptional circumstances clearly showing malice or willfulness." *Anthony v. Sec. Pac. Fin. Servs., Inc.* 75 F.3d 311, 316 (7th Cir. 1996) (internal quotation marks omitted) (applying Illinois law). Claims for tortious interference can present the gross fraud or exceptional circumstances required to support a claim for punitive damages. *See Sirazi v. Gen. Mediterranean Holding, SA*, 826 F.3d 920, 924 (7th Cir. 2016). Because First Security has adequately alleged a claim against Craig for tortious interference—and has alleged that this interference occurred through fraud—it is entitled to request punitive damages.

### Conclusion

For the foregoing reasons, the Court grants defendants' motion to dismiss [dkt. no. 34] in part and denies it in part. The Court dismisses Count 1 as to defendant Kim Webster-Campbell and dismisses Counts 3 and 5 as to both defendants. The dismissals of Counts 1 (as to Kim Webster-Campbell) and 3 are with leave to amend. The Court also strikes First Security's request for attorney's fees. The Court otherwise denies the motion to dismiss. The case is set for a status hearing on January 25, 2017 at 9:00 a.m. for the purpose of setting a discovery and pretrial schedule.

                                                MATTHEW F. KENNELLY
                                                United States District Judge

Date: January 19, 2017